

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

> Opinion No. O-5770
> Re: Does the Comptroller of Public
> Accounts have authority to
> collect a gross receipts tax
> from a specialized motor carrier
> up until the time the specialized
> motor carrier becomes liable for
> a tax on intangible assets?

Under date of December 15, 1943, you submitted
for the opinion of this department the following inquiry
which we quote from your letter:

"I have a case where a contract motor carrier
obtained a specialized carrier's permit January 10,
1942, but he will not be assessed intangible tax until
January 1, 1943 of the next year, and tax will not be
due until October of the next year. This operator
contends that he is not due to pay any gross receipts
tax after the specialized permit is granted, which
was January 10, 1942.

"Please tell me if I have the authority to
collect gross receipts tax up until the intangible
assessments were made, which was January 1, 1943."

Article 7066b(a), V. R. C. S., imposes a gross
receipts tax and is as follows:

"Each individual, partnership, company, associa-
tion, or corporation doing business as a 'motor bus
company' as defined in Chapter 270, Acts Regular Session
of the Fortieth Legislature, as amended by the Acts of
1929, First Called Session of the Forty-First Legislature,

...MUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George H. Sheppard, page 2

Chapter 78, or as 'motor carrier' or 'contract carrier'
as defined in Chapter 277, Acts Regular Session of the
Forty-second Legislature, over and by use of the public
highways of this State, shall make quarterly on the
first day of January, April, July, and October of each
year, a report to the Comptroller, under oath, of the
individual, partnership, company, association, or corpora-
tion by its president, treasurer, or secretary, showing
the gross amount received from intrastate business done
within this State in the payment of charges for transporting
persons for compensation and any freight or commodity for
hire, or from other sources of revenue received from intra-
state business within this State during the quarter next
preceding. Said individual, partnership, company, associa-
tion, or corporation at the time of making said report,
shall pay to the State Treasurer an occupation tax for
the quarter beginning on said date equal to two and two
tenths (2.2) per cent of said gross receipts, as shown by
said report. Provided, however, carriers of persons or
property who are required to pay an intangible assets
tax under the laws of this State, are hereby exempted
from the provisions of this Article of this Act."

Article 7105, V. R. C. S., imposes a tax on
intangible assets and is as follows:

"Each incorporated railroad company, ferry company,
bridge company, turnpike, or toll company, oil pipe line
company, and all common carrier pipe line companies of
every character whatsoever, engaged in the transportation
of oil, and in addition each 'motor bus company,' as
defined in Chapter 270, Acts, Regular Session of the
Fortieth Legislature, as amended by the Acts of 1929,
First Called Session of the Forty-first Legislature,
Chapter 78, and each 'common carrier motor carrier'
operating under certificates of convenience and necessity
issued by the Railroad Commission of Texas, doing business
wholly or in part within this State, whether incorporated
under the laws of this State, or of any other State,
territory, or foreign country, and every other individual,

Honorable George H. Sheppard, page 3

company, corporation, or association doing business of the same character in this State in addition to the ad valorem taxes on tangible properties which are or may be imposed upon them respectively, by law, shall pay an annual tax to the State, beginning with the first day of January of each year, on their intangible assets and property, and local taxes thereon to the counties in which its business is carried on; which additional tax shall be assessed and levied upon such intangible assets and property in the manner provided in Chapter 4, Title 122 of the Revised Civil Statutes of Texas, 1925. . . ."

Under the various statutes pertaining to the intangible assets tax, Articles 7105 to 7116, V. R. C. S., it is clearly indicated that the intangible assets tax will be assessed on assets owned on the 1st day of January and intangible assets acquired after the 1st day of January will not be subject to the tax until the following year.

Under the facts presented the carrier in question was not liable for a tax on intangible assets on his operations as a specialized motor carrier for the year 1942.

Since the carrier operating as a specialized motor carrier is not liable for intangible assets tax for 1942, if he is allowed to claim the exemption in the gross receipts tax for the remaining eleven months and twenty days of 1942 on the assumption that he is required to pay an intangible assets tax, he will avoid both taxes for substantially the whole of the year on his operations as a specialized motor carrier.

Our question here in construing the exemption from gross receipts tax in Article 7066b(a) is one of legislative intent. It is apparent that the Legislature intended for the carriers included within the provisions of the gross receipts tax to pay either the gross receipts tax or a tax on intangible assets and the exemption provision was added to prevent the carrier from being subject to both kinds of taxes on the same kind of carrier operations.

Honorable George H. Sheppard, page 4

The part of Article 7066b(a) under which the carrier is claiming exemption from gross receipts tax is as follows:

"Provided, however, carriers of persons or property who are required to pay an intangible assets tax under the laws of this State, are hereby exempted from the provisions of this Article of this Act."

The court in the case of Houston Belt and Terminal Railway Company v. Clark, Secretary of State, et al., 122 S. W. (2d) 356, affirmed by the Supreme Court in 145 S. W. (2d) 373, states a general rule of law with reference to exemption from taxation, which is as follows:

"We must conclude that appellant has not shown that it is 'not organized for profits' nor as 'having no income from the business done' by it within the meaning of such terms as used in the taxing act, and under the settled rule that all statutory exemptions from taxation shall be strictly construed with the burden on the taxpayer claiming the exemption of proving facts showing that the complaining taxpayer does come within the exempted classification." (Emphasis ours)

It is the opinion of this department that until the carrier operating under a certificate of convenience and necessity as a specialized motor carrier becomes subject to liability for intangible assets tax it cannot avail itself of the exemption from gross receipts tax as is contained in Article 7066b(a) of V. R. C. S.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JAN 17, 1944

ATTORNEY GENERAL OF TEXAS

By

John C. Aycock
John C. Aycock
Assistant

JCA:ARW


APPROVED OPINION COMMITTEE BY CHAIRMAN